UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANELLE CRUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15CV689NCC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Janelle Crum (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 13). Defendant has filed a brief in support of the Answer. (Doc. 16). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 8).

## I.
## PROCEDURAL HISTORY

On January 24, 2012, Plaintiff filed her applications for DIB and SSI. (Tr. 9, 74-81, 157-62). Plaintiff alleged a disability onset date of March 30, 2011. Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 57-62, 93). After a hearing, by decision, dated January 27, 2014, the ALJ found Plaintiff not disabled. (Tr.

9-21). On February 24, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 2-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her Residual Functional Capacity (RFC). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing

McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  Masterson v. Barnhart, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  Krogmeier, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position.  See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

4

Plaintiff, who alleged disability due to Multiple Sclerosis (MS),[1] testified at the hearing that she drove a car "maybe a couple of times a week"; that she had trouble seeing at night; that she had a GED; that she could not perform a job where she sat for a full eight hours five days a week because of fatigue, difficulty moving, and pain while sitting "in one area"; that her MS symptoms, including balance and strength, fluctuated; and that typing on a keyboard caused her hands to cramp. (Tr. 411-14, 417-18).

The ALJ found that Plaintiff met the insured status through March 31, 2013; that she had not engaged in substantial gainful activity since March 30, 2011, her alleged onset date; that she had the severe impairment of MS; and that she did not have an impairment or combination of impairments that met or medically equaled a listed impairment.[2] The ALJ found that Plaintiff

---

[1] According to http://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/home/ovc-20131882 (last visited May 6, 2016):

> Multiple sclerosis (MS) is a potentially disabling disease of the brain and spinal cord (central nervous system).
>
> In MS, the immune system attacks the protective sheath (myelin) that covers nerve fibers and causes communication problems between your brain and the rest of your body. Eventually, the disease can cause the nerves themselves to deteriorate or become permanently damaged.
>
> Signs and symptoms of MS vary widely and depend on the amount of nerve damage and which nerves are affected. Some people with severe MS may lose the ability to walk independently or at all, while others may experience long periods of remission without any new symptoms.
>
> There's no cure for multiple sclerosis. However, treatments can help speed recovery from attacks, modify the course of the disease and manage symptoms.

[2] The Listing for Multiple Sclerosis provides:

> 11.09 Multiple sclerosis. With:
>
> A. Disorganization of motor function as described in 11.04B; or

had the RFC to perform sedentary work with the following limitations: Plaintiff was unable to kneel, crouch, crawl, or climb ladders, ropes or scaffolds; she could occasionally stoop and climb ramps and stairs; she could not reach overhead bilaterally on more than an occasional basis; she could not operate any foot control operations; she should avoid all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery; and she was limited to occupations that did not require night vision or peripheral acuity outside of shoulder's width.

Plaintiff contends that the ALJ's decision is not based on substantial evidence because the ALJ incorrectly determined Plaintiff's RFC, and because the ALJ stated that he was giving "great weight" to the opinion of Barbara Green, M.D., but failed to actually do so when determining Plaintiff's RFC. For the following reasons, the court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting

---

B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or

C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

As stated above, the ALJ in this matter found that Plaintiff had the RFC to perform sedentary work with the following limitations: Plaintiff was unable to kneel, crouch, crawl, or climb ladders, ropes or scaffolds; she could occasionally stoop and climb ramps and stairs; she could not reach overhead bilaterally on more than an occasional basis; she could not operate any foot control operations; she should avoid all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery; and she was limited to occupations

that did not require night vision or peripheral acuity outside of shoulder's width. Notably, the ALJ did not include any fingering or handling limitations in Plaintiff's RFC.

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §. 404.1567(a). Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions, and any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base. SSR 96–9P, 1996 WL 374185, at *8.

In addition to Plaintiff's treatment records with Dr. Green, when determining Plaintiff's RFC, the ALJ considered a September 20, 2013 Medical Source Statement, completed by Dr. Green in which Dr. Green opined that Plaintiff had the following abilities relevant to her RFC: Plaintiff could lift and/or frequently carry 15 pounds and lift and/or occasionally carry 20 pounds; that she could stand and/or walk 15 minutes continuously; that she could stand and/or

8

walk 3 hours in an 8-hour workday; that she could sit continuously at one time for 2 hours; that throughout an 8-hour workday she could sit 8 hours; that she had limited ability to push and/or pull in that she could engage in no heavy pushing or pulling; that she could never climb, stoop, kneel, crouch, or crawl; that she could occasionally balance push, handle, and finger; and that she could frequently feel see, speak, and hear. Dr. Green also opined that Plaintiff had to avoid moderate exposure to extreme heat, cold humidity, dust, and vibration; and that she must avoid all hazards and heights. (Tr. 241-42).

The ALJ stated that he gave "great weight" to Dr. Green's opinion as expressed in the Medical Source Statement upon formulating Plaintiff's RFC. (Tr. 16). Plaintiff contends that the ALJ's opinion, in this regard, is not based on substantial evidence. In support of this argument, Plaintiff states that the ALJ failed to account for the handling and fingering limitations imposed by Dr. Green when formulating her RFC, and that, therefore, the ALJ failed to account for the inconsistency between the RFC which the ALJ assigned to Plaintiff and Dr. Green's opinion. (Doc. 13 at 10). For the following reasons, the court finds Plaintiff's argument without merit and that the ALJ gave proper weight to Dr. Green's opinion.

First, when giving Dr. Green's opinion great weight, the ALJ considered that Dr. Green had a "long standing treating relationship" with Plaintiff. (Tr. 16). Notably, Dr. Green was Plaintiff's treating doctor for her MS, and she had a treating relationship with Plaintiff for, at least, three years. See 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i) ("Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion."); Martise v. Astrue, 641 F3d 909, 926 (8th Cir. 2010) ("When deciding how much weight to give a

treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations.") (internal citation omitted).

Second, the ALJ considered that Dr. Green is a neurologist who specializes in the treatment of MS. (Tr. 16). See Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist."). See also 20 C.F.R. §§ 404.1527(d)(5), and 416.927(d)(5).

Third, the ALJ considered that Dr. Green's opinion was based on her treating relationship with Plaintiff, and consistent with her own treatment notes. (Tr. 16). Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013) (affirming where ALJ declined to give treating doctor's opinion controlling weight where it was inconsistent with doctor's treatment notes); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).

Fourth, the ALJ gave Dr. Green's opinion controlling weight to the extent it was consistent with the overall objective medical evidence. (Tr. 16). See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate the need to evaluate the record as a whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation). In this regard, when Plaintiff complained of left middle finger pain, an x-ray showed no abnormalities. (Tr. 387). Further, upon examination, by Dr. Green and other medical providers, Plaintiff had normal and

10

full strength in her upper extremities, no edema in her extremities, no numbness or weakness in her fingers, normal sensation in both hands, normal ROM in her musculoskeletal system, normal muscle tone and strength, and full grip strength, although, on occasion she had slightly limited flexion of the left middle finger. (Tr. 222-23, 238, 336, 339, 246, 351, 354, 393-94, 397). As such, the court finds that the record evidence is inconsistent with the extreme handling/fingering limitations imposed on Plaintiff by Dr. Green.

Fifth, the ALJ considered that no other treating or examining physician rendered opinion evidence regarding Plaintiff's impairments and limitations. (Tr. 16). Accordingly, no other treating or examining physician opined on Plaintiff's handling/fingering limitations.

Sixth, to the extent the ALJ did not incorporate the fingering and handling restrictions imposed by Dr. Green in Plaintiff's RFC, an ALJ is not required to rely entirely on the opinion of a single physician. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions."); Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians). Rather, it is the role of the ALJ to review the record as a whole when determining a claimant's RFC. See Cline v. Colvin, 771 F.3d 1098, 1103 (8th Cir. 2014); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole.").

11

Moreover, as set forth above, the extreme fingering and handling restrictions imposed by Dr. Green in the Medical Source Statement are inconsistent with Dr. Green's own treatment notes, see Meyers, 721 F.3d at 525, and are inconsistent with the record as a whole, see Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole."). Further, to the extent Dr. Green offered her opinion by making checkmarks on a form, "[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010). An ALJ, moreover, properly discounts a treating doctor's opinion when it consists of making checkmarks on a form, with no citations to medical evidence. Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) (treating doctor's "cursory checklist statement" included "significant impairments and limitations" which were absent from treatment notes).

Seventh, it was the ALJ's function to resolve conflicts among the various treating and examining physicians when determining Plaintiff's RFC. Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006).

Eighth, to the extent the ALJ gave great weight to Dr. Green's opinion, the ALJ gave good reasons for doing so. Cline v. Colvin, 771 F.3d 1098, 1103 (8th Cir. 2014) ("Whether granting 'a treating physician's opinion substantial or little weight,' Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000), the commissioner must 'always give good reasons . . . for the weight' she gives, 20 C.F.R. § 416.927(d)(2).").

Ninth, to the extent that the ALJ did not explain why he did not include the fingering and handling limitations imposed by Dr. Green in the Medical Source Statement, the ALJ's failure to do so does not require reversal and remand because substantial evidence supports the ALJ's RFC

determination. See Welch v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014) (ALJ's failure to explicitly address applicable SSR 96-9p was an arguable deficiency in opinion writing that had no practical effect on the decision because ALJ found Plaintiff's limitations had no more than a slight impact on claimant's ability to perform full range of sedentary work; therefore, that was not a sufficient reason to set aside the ALJ's decision); Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

Further, the ALJ's failure to mention the extreme fingering and handling limitations imposed by Dr. Green does not mean that the ALJ failed to consider Dr. Green's opinion in its entirety. See Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (while ALJ "was required to develop the record fully, she was not required to provide an in-depth analysis on each piece of evidence"); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Tenth, the only references in the record for Plaintiff having difficulty fingering and handling are her own self reporting. See Wright, 789 F.3d at 854. For example, in a Function Report – Adult, Plaintiff said that she had difficulty using her hands and that she could not draw for more than "a couple of hours a day" because she had "hand cramps" and because her hand "seiz[ed] [sic] up when [she] draw[s] for a while." (Tr. 182-83). On the other hand, Plaintiff also reported that she drove a car, played cards with friends, "daily or every other day," shopped in stores, "wipe[d] down tables and chairs," turned the washing machine on and off, and could wash "a few dishes at a time." (Tr. 180-81).

13

Eleventh, to the extent Plaintiff argues that this case is analogous to Reynolds v. Astrue, 2007 WL 51000461 (E.D. Mo. Aug. 7, 2007), where the court reversed and remanded to the Commissioner, the court finds Plaintiff is mistaken as the court in Reynolds did so because the ALJ did not consider the opinion of the claimant's treating doctor that the claimant could not work and because there was significant evidence that supported the treating doctor's opinion. In this matter, the ALJ considered, in detail, Dr. Green's *medical notions* upon examination of Plaintiff, there is no medical evidence to support the fingering and handling limitations Dr. Green imposed by means of *checkmarks on a form*, Dr. Green did not explain the basis for these limitations, and substantial evidence supports the ALJ's RFC determination. Notably, the instant matter is factually analogous to Eberhart v. Colvin, 2014 WL 3956480 (E.D. Mo. Aug. 13, 2014), where the court affirmed despite the ALJ's failure to include all the limitations imposed by the claimant's treating doctor in his RFC assessment. Specifically, the court, in Eberhart, 2014 WL 3956480, at *13, found that there was "substantial evidence in the record as a whole to support the ALJ's determination that the claimant was capable of performing light work, with some restrictions that did not include absenteeism. Because the ALJ's RFC determination [was] supported by some medical evidence and [was] properly based on the record as a whole, the ALJ did not err in failing to include absenteeism as a limitation in [the claimant's] RFC."

In conclusion, the court finds that the ALJ's RFC determination is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED** (Docs. 1, 13) and Plaintiff's case is **DISMISSED**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 9th day of June, 2016.

        /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE